UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
———————————————————————X
DIRECT2MARKET, LLC

                       Plaintiff,                    Docket No. 1:24-cv-02534-DG-LKE

   -against-                              **AMENDED COMPLAINT**
                                                          **WITHOUT JURY DEMAND**

SPECTRUM BRANDS HOLDINGS, INC., and
EMPOWER BRANDS, LLC.,

                      Defendants.
———————————————————————X

     Plaintiff, Direct2Market, LLC by and through its attorneys, Margolin & Pierce, Attorneys at Law, as and for its Amended Complaint against Spectrum Brands Holdings, Inc., and Empower Brands, LLC., upon information and belief, respectfully alleges as follows:

## PRELIMINARY STATEMENT

**1.** This is an action to recover sales commissions due Plaintiff in connection with the sale of Defendants' products to Walmart Inc., and Sam's Club (herein "Walmart") which occurred in the period from January 1, 2022, through December 31, 2022. The total sales to Walmart generated by Plaintiff totaled $139 million in 2022 which Spectrum claims it paid commissions on $125,118,358.08 of sales.[1] The Plaintiff was not paid commissions on $23,811,590.97 of sales and there is an amount due and owing the Plaintiff in the sum of $714,347.27.

## PARTIES

**2.** At all times material, Plaintiff, Direct2Market, LLC (herein "D2M" or "Plaintiff") was and still is a Delaware limited liability company, organized under the laws of the State of

---

[1] Spectrum failed to account for $9,986,000 of invoices and Spectrum acknowledges it failed to pay commissions on $13,886,402 of sales.

Delaware with its office located at 5380 Gulf of Mexico Drive, Suite 305, Longboat Key, FL 34228.

3. Upon information and belief, at all times material, Defendant Spectrum Brands Holdings, Inc., ("Spectrum" or "Defendant") was and still is a public corporation, formed under the laws of the State of Wisconsin, with an office located at 3001 Deming Way, Middleton, WI 53562.

4. Upon information and belief, at all times material, Defendant Spectrum did and continues to do business in the State of New York, and its products are sold by the world's top 25 retailers and are available in more than one million stores in approximately 160 countries.

5. Upon information and belief, at all times material, Defendant Empower Brands, LLC ("Empower" or "Defendant") was and still is a Wisconsin limited liability company formed by Spectrum under the laws of the State of Wisconsin, with an office located at 3001 Deming Way, Middleton, WI 53562.

6. Upon information and belief, at all times material, Defendant Empower did and continues to do business in the State of New York.

## JURISDICTION AND VENUE

7. This Court has subject matter jurisdiction over this action pursuant to 28 U.S.C. § 1332(a)(2) as all parties to this action are citizens or business entities of different states and the matter in controversy exceeds the sum or value of $75,000, exclusive of interest and costs.

8. This Court is the proper venue for the adjudication of the causes of action asserted in this litigation pursuant to 28 U.S.C. § 1391(b)(2).

9. Jurisdiction and venue are set in the Eastern District of New York, by agreement between the Parties.

## BACKGROUND

10. On or about February 4, 2022, Spectrum acquired major brands from Tristar Products Inc., ("Tristar") including its Appliance and Cookware Business, combined it with its home and personal care segment, and created a new separate stand-alone global company, Empower. The acquisition added Power XL, Emeril Lagasse, and Copper Chef, well-established brands with net sales of $546 million in 2021 to Empower.

11. As a result of the acquisition of the TriStar business, Spectrum formed a new entity, Empower, for the purpose of continuing to market and sell those brands hoping to build a global appliance platform with combined 2021 net sales of 1.8 billion dollars and adjusted EBITDA of 142 MM.

12. From approximately 2011 to 2021, Plaintiff D2M was a consultant and sales representative for TriStar Products and earned commissions on sales of TriStar Products to Walmart. The Plaintiff grew TriStar sales to Walmart exponentially, year after year.

13. Plaintiff continued to service the Walmart account for Spectrum and Empower and the Plaintiff's consulting agreement with Tristar was assigned and transferred to Spectrum and Empower.

14. On September 1, 2022, Empower separately retained Plaintiff by written agreement to provide services to it as required to negotiate and complete the sales of products to Walmart in exchange for commissions.

15. Plaintiff performed services as required and generated sales in excess of $139,004,760.33 in 2022 for Spectrum and Empower but has not been paid commissions for all of those sales despite due demand.

## STATEMENTS OF FACTS

## THE TRISTAR CONSULTING AGREEMENT

16. By written Consulting Agreement, ("Agreement") dated June 1, 2011, and amended August 18, 2018, non-party Tristar appointed Plaintiff to serve as a consultant and sales representative for Tristar to specific retailers including Walmart. A copy of the Consulting Agreement is annexed as **Ex A**.

17. As relevant to this action, Tristar agreed to pay Plaintiff commissions in the amount of 3% or 2.4 % on discounted promotions, on "Net Sales" as defined in the Agreement.

18. The Tristar Agreement further provides that "Net Sales" shall mean total sales receipts, less taxes, freight or other shipping charges, discounts, credits, and allowances, including those given for advertising and as markdowns in lieu of returned goods and adjustments for bad debts or uncollectible accounts.

19. Pursuant to the Tristar Agreement, Plaintiff negotiated sales of the products to Walmart in excess of $950,000,000 dollars from December 2011 to December 2022.

20. On or about February 4, 2022, Defendant Spectrum acquired the Tristar Products appliance and Cookware business, combined it with its home and personal care segment, and created Empower.

21. Upon information and belief, Tristar assigned and transferred the Agreement to Spectrum as part of the acquisition.

22. Plaintiff continued to service the Walmart account for Spectrum and Empower.

23. On or about March 30, 2022, Spectrum paid Plaintiff $133,280 in commissions for sales that occurred prior to March 2022. A copy of the commission check is annexed as **Ex B**.

24. Spectrum paid D2M $ 4,392,961.75 for commissions in 2022, and $ 457,857.39 for commissions in 2023. Attached as **Ex C** and **Ex D** are the 1099's for 2022 and 2023 issued by Spectrum.

25. From March 2022, Plaintiff has not received payment for its services in arrears for 2022.

26. Pursuant to the Agreement, Plaintiff has not received payment for a portion of the sales to Walmart in excess of $23,811,590.97.

27. Defendant has breached the Agreement by failing to pay Plaintiff commissions in the amount of 3% of the net sales to Walmart.

28. Plaintiff is entitled to its commissions by reason of Defendant's wrongful actions as set forth herein.

29. Despite due demand, Defendant has refused to pay Plaintiff commissions.

## THE EMPOWER AGREEMENT

30. By written independent contractor agreement ("Agreement") dated September 1, 2022, Defendant Empower entered into a written agreement for the provision of services to be supplied by Plaintiff for the sale of the products from Defendant to certain customers. A copy of the Agreement is annexed as **Ex E**.

31. The Agreement was executed on September 1, 2022, for an extension of its Agreement for a term of December 1, 2022, to December 31, 2022, and provided that Plaintiff shall be paid commissions for purchase orders that are secured, accepted, and shipped on or before December 31, 2022, after Empower receives payment from Walmart.

32. As relevant to this action, the Agreement provides that Defendant shall pay Plaintiff a commission of three (3%) percent on "Net Sales" of products to Walmart and two and

a half percent (2.5%) of "Net Sales" of products to Walmart for promotions or rollbacks, on purchase orders that are secured, accepted and shipped from December 1, 2022, through December 31, 2022, and prior.

33. The Agreement further provides that "Net Sales shall mean the company's invoice sales price less cash discount, credits for returned or defective/destroyed products, trade spending, (including without limitation trade rebates, slotting, and product placement fees), off-invoice allowances, pricing adjustments, and consumer offers."

34. Pursuant to the Agreement, Plaintiff negotiated sales of the products to Walmart in excess of $6.5 Million from December 1, 2022, to December 31, 2022, at its sole costs and expense and the Defendants received payment from Walmart.

35. Notwithstanding the foregoing, Plaintiff has not received any payments due under the Agreement from Defendant despite due demand.

36. As relevant to this action, the Agreement provides in par 11.1:

> Any dispute regarding the interpretation or validity of, or otherwise arising out of, this Agreement or relating to the services provided hereunder shall be governed by the laws of the State of New York. The parties hereto expressly waive any right to a jury trial. Any proceeding under this Agreement shall be tried by a judge without a jury. In addition, the parties agree and consent to such trial being held exclusively in the federal district court or state courts within the State of New York.

37. Defendant has breached the Agreement by failing to pay Plaintiff commissions in the amount of 3% of the net sales to Walmart.

38. Plaintiff is entitled to its commissions by reason of Defendant's wrongful actions as set forth herein.

39. Despite due demand, Defendant has refused to pay Plaintiff commissions.

## AS AND FOR THE FIRST CAUSE OF ACTION

### (Breach Of Contract)

40. Plaintiff repeats and realleges paragraphs "1 through 39" allegations as if each was set forth in full herein.

41. Plaintiff and Defendants entered into sales representation Agreements for the sale of the Defendants' products to Walmart.

42. The Plaintiff performed services under those Agreements and produced sales of $139,004,740.33 in 2022. The Defendants failed to pay Plaintiff commissions on $23,811,590.97 of sales and there is an amount due and owing in the amount of $714,347.27.

43. Defendants have breached the Agreements by failing to pay Plaintiff commissions on net sales of its products to Walmart.

44. The Plaintiff is entitled to its commissions in an amount to be determined at trial.

45. In addition to a judgment for its commissions based on 3% of the net sales, Plaintiff demands judgment for all its costs, and expenses of this action including attorney's fees.

## AS AND FOR A SECOND CAUSE OF ACTION

### (Accounting)

46. Plaintiff repeats and realleges the allegations of paragraphs "1 through 45" as if each was set forth in full herein.

47. Plaintiff is entitled to an accounting from the Defendants for its sales to Walmart from January 2022 to January 2023.

48. Plaintiff's commission for its services is defined as 3% of net sales of Defendants' products to Walmart.

49. Defendants have breached the Agreement in failing to provide a full accounting to Plaintiff. Plaintiff is entitled to an examination of the books and records to determine that all amounts due and owing have been paid to Plaintiff and a determination of commission owed but not yet paid, and to the amount of commissions owed that Plaintiff is not aware of. The amounts believed owed are in excess of $714,347.27.

**WHEREFORE**, Plaintiff demands judgment:

(A)  On the First Cause of Action, in an amount to be determined at trial.

(B)  On the Second Cause of Action, an accounting together with such other and additional relief as this Court deems just, fair, and reasonable.

Dated: Southampton, New York
       July 11, 2024

Margolin & Pierce, LLP

By: *Errol F. Margolin*
Errol F. Margolin
*Attorney(s) for Plaintiff*
16 Hampton Road, Ste 3
Southampton, NY 11968
(917) 783-5934
margolinandpierce@gmail.com